PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HAMM, | ) | |
| | ) | CASE NO. 1:19CV1110 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Respondent. | ) | **ORDER** [Resolving ECF No. 5] |

**I. Background**

*Pro se* Petitioner James Hamm has filed a Petition for a Writ of *Habeas Corpus* under 28 U.S.C. § 2241. ECF No. 1. Petitioner is a federal prisoner (#56651-060), serving a sentence in connection with *United States of America v. Hamm*, 1:10-CR-509 (Gaughan, J.). He is currently placed at Oriana House, Inc., in Cleveland, for prerelease custody (ECF No. 1 at PageID#: 1), and he is scheduled to be released on October 30, 2019.[1] Fed. Bur. Prisons, https://www.bop.gov/inmateloc/ (last visited June 28, 2019). Petitioner seeks recalculation of his good-time credits pursuant to the First Step Act. ECF No. 1 (supplemented at ECF No. 2).

---

[1] This scheduled release date is more than nine weeks earlier than the date Petitioner had stated in his petition (January 5, 2020). *See* ECF No. 2 at PageID#: 15. It is unclear whether this new scheduled release date accounts for the First Step Act good-time credit regime or if some other reason explains the apparent advance. Regardless, this development does not by itself moot the petition. Petitioner alleges that he should have been released from Bureau of Prisons Custody already. *Id.*

(1:19CV1110)

Promptly after the filing of the *habeas corpus* petition, the Court undertook a preliminary review of the petition to determine "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." 28 U.S.C. § 2243; Rule 4 of the Rules Governing *Habeas Corpus* Cases Under Section 2254 (applicable to petitions under § 2241 pursuant to Rule 1(b)). Perceiving room for disagreement about how to interpret the relevant statute, the Court directed the Bureau of Prisons ("BOP") to respond on an accelerated briefing schedule. ECF No. 3. The BOP responded and moved to dismiss the petition (ECF No. 5), and Petitioner declined to file a reply within the ten-day period allotted by the Court (*see* ECF No. 3).

For the following reasons, the BOP's motion to dismiss is granted, and Petitioner's *habeas corpus* petition is dismissed without prejudice.

**II. Analysis**

Subparagraph 102(b)(1)(A) of the First Step Act amended 18 U.S.C. § 3624(b) to alter the availability of good-time credit for federal inmates. Specifically, it increased the maximum allowable good-time credit from 47 to 54 days per year, and it directed the BOP to calculate good-time credit from the beginning of the final year of the sentence rather than prorating at the end. First Step Act, Pub. L. No. 115-391, § 102(b)(1)(A), 132 Stat. 5194 (2018).

Separately, Subparagraph 102(b)(1)(B) of the First Step Act developed a system of earned-time transfer credits. Earned-time transfer credits are to be awarded as a benefit of inmates' participation in recidivism-reduction programming. Under Subparagraph 102(b)(1)(B),

2

the BOP can place an "eligible prisoner" in prerelease custody outside of prison, or on supervised release up to 12 months prior to the end of the sentence. *Id.*, § 102(b)(1)(B).

To aid implementation of certain portions of the First Step Act, the Attorney General is directed to create a "risk and needs assessment system," to be completed and released no later than 210 days from the date of the statute's enactment; that is, July 19, 2019. *Id.*, § 101(a); 18 U.S.C. § 3632(a). The risk and needs assessment system is meant to assess inmates' risk of recidivism and develop guidance for managing and reducing that risk.

Immediately following the good-time credit provision and earned-time transfer credit provisions (Subparagraphs 102(b)(1)(A) and 102(b)(1)(B), respectively) is Paragraph 102(b)(2), titled "EFFECTIVE DATE," which reads, "The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system . . . as added by section 101(a) of this Act." Pub. L. No. 115-391, § 102(b)(2).

Petitioner argues that the delayed effective date in Paragraph 102(b)(2) should apply only to the earned-time transfer credit amendment described in Subparagraph (b)(1)(B) and not to the good-time credit amendment described in Subparagraph (b)(1)(A). ECF No. 2 at PageID#: 18-23. He argues that, whereas the earned-time transfer credit system is novel and complex and requires substantial regulatory guidance to be implemented by the BOP, the good-time credit amendment is ministerial, and a risk and needs assessment system does nothing to aid its implementation. Congress had no reason, he posits, to delay the effective date of the good-time credit amendment in Subparagraph 102(b)(1)(A).

3

(1:19CV1110)

Whatever the logical appeal of Petitioner's position, it flatly contradicts the plain text of the statute. Paragraph 102(b)(2) unequivocally delays the effective date of the *subsection* (that is, Subsection 102(b))[2] until the Attorney General completes and releases the risk and needs assessment system. Pub. L. No. 115-391, § 102(b)(2). Even if the statute was drafted inartfully, as Petitioner suggests, it falls to Congress, not the Court, to amend it. *United States v. Lorenz*, 2019 WL 20802280, at *1, *1 n.10 (N.D. Ohio May 13, 2019) (Gwin, J.) ("[Petitioner]'s interpretative arguments . . . would require the Court to rewrite the law."); *see Levan v. United States*, Case No. 4:19-CV-831, ECF No. 7 at PageID#: 105 (N.D. Ohio June 3, 2019) (Polster, J.) ("Congress was explicit that the delayed effective date applies to *all* amendments made to [Subsection 102(b)]."). Because the Attorney General has not yet completed and released the risk and needs assessment system described in Subsection 101(a), the good-time credit amendment has not yet taken effect, and the *habeas corpus* petition is premature.

Petitioner purports to identify constitutional concerns with this plain-text interpretation. As Judge Gwin pointed out in a recent case, however, the good-time recalculation delay does not threaten the constitutional guarantees of equal protection or due process. "[T]o state an equal protection claim, [the petitioner] must first show that the law treats him differently as compared

---

[2] *See* Senate Office of the Legislative Counsel, Legislative Drafting Manual 10 (1997) ("SECTION BREAKDOWN. A section is subdivided and indented as follows:
    (a) SUBSECTION.
        (1) PARAGRAPH.
            (A) SUBPARAGRAPH.
                (i) CLAUSE. . . .").

(1:19CV1110)

to other similarly situated persons." *Lorenz*, 2019 WL 2082280, at *1 (footnote reference omitted). As in *Lorenz*, Petitioner in this case makes no real effort to show that he is treated differently from others who are similarly situated. "Nor could he do so as the delay applies to everyone eligible for good time credit." *Id.* Petitioner's due process argument similarly fails. "[T]he First Step Act does not impose a liberty deprivation, it merely delays a liberty restoration [Petitioner] had no constitutional right to in the first place. If Congress was under no obligation to increase the good time credit at all, surely it is not under a constitutional obligation to increase it immediately." *Id.*

The cutoff date for the completion and release of the Attorney General's risk and needs assessment system is fast approaching. When that assessment system is completed, Petitioner may make an administrative request with the BOP for recalculation of good-time credit.[3] Without the benefit of the BOP's response to such a request, however, the Court is not in a position to discern whether Petitioner merits immediate release. *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996) (The issue of sentencing credit "is not ripe for review until the Bureau of Prisons has ruled on a defendant's request for credit."); *see United States v. Wilson,* 503 U.S. 329 (1992) (holding that it is the BOP's obligation, not the court's, to compute and apply sentencing credits).

---

[3] For that matter, he may perhaps file an administrative request right away. The BOP has announced its interpretation of the First Step Act effective-date provision, but Petitioner does not assert that the BOP has categorically refused to plan ahead in response to good-time credit requests.

5

(1:19CV1110)

## III.  Conclusion

For the reasons stated herein, the BOP's motion to dismiss ([ECF No. 5](#)) is granted, and the Petition for a Writ of *Habeas Corpus* is dismissed without prejudice to later filing.


IT IS SO ORDERED.


   June 28, 2019                                          */s/ Benita Y. Pearson*
Date                                                      Benita Y. Pearson
                                                          United States District Judge